[Civ. No. 8108. First Appellate District, Division Two.—May 12, 1932.]

ALFRED D. STEALEY, Appellant, . v. GEORGE S. CHESSUM et al., Respondents.

Rufus H. Kimball and Ross & Ross for Appellant.

Edmund Scott for Respondents.

STURTEVANT, J.—This is an action to recover for personal injuries. The defendants had judgment and the plaintiff has appealed. About 11 o'clock at night on the twenty-ninth day of November, 1930, the automobile driven by the defendant George Chessum struck Mrs. Florence S. Adams in the back, knocked her down, and so injured her that she died immediately. The accident occurred at a point about halfway between Burlingame Avenue and Ralston Avenue on El Camino Real, the highway leading from San Francisco to San Jose. As her sole heir the plaintiff, her brother, commenced this action.

Except as we will mention no vehicles were driving on the highway and it was not obstructed by any objects preventing an unobstructed view between Burlingame Avenue and Ralston Avenue. Between the curbs the highway is fifty feet wide. There is a slight downgrade to the south. The highway is paved and is surfaced with black asphaltum. The distance between the curb lines of the two avenues above mentioned is 350 feet. On each side of the highway is a sidewalk four feet wide, but the record does not disclose its condition or whether it is usable. On the western side of the highway between the sidewalk and the

property line there are large eucalyptus trees. On the same side of the highway, in the tree line, there are three electroliers, one at each end of the block and one in the middle of the block. The one in the middle of the block is located approximately twenty feet south of one tree and seventy feet north from the next tree. There are buildings on each side of the highway—seven in all. On the evening of the accident it was clear until some time after the accident, when the fog came in.

At the time of the accident the deceased was fifty-three years of age and had an expectancy of 16.72 years. She weighed about 115 pounds and was five feet six inches tall. She was wearing a tan-colored coat and had some papers and a purse in her hand. She had been in San Francisco and had come down in the bus. She was seen to alight from the bus at the northwest corner of Burlingame Avenue and the highway. From that moment she was not seen again by anybody except the defendant and his companion. Those two had been in north Burlingame and were returning. They were driving south on the highway at a speed which each stated to be thirty or thirty-five miles an hour. At this point it may be remarked that there was evidence that the accident happened in a residence district and that the speed limit at that point was twenty miles an hour. As the automobile approached from the north it was driven slightly on the right-hand side of the middle of the highway. When it was opposite a point approximately in the middle of the block the driver saw the decedent six to ten feet in front of him. Her back was toward him and she was apparently walking in the same direction that he was driving. He attempted to stop, but his car hit decedent, knocked her down and from the injuries inflicted she died immediately. An examination disclosed that both legs were broken, that her neck was broken, and that her chest was crushed. The right-hand light on the automobile was broken, the right-hand fender was bent, and the hood on the engine was dented, bent, or twisted, according to the language of different witnesses. After the impact the driver drove his automobile up to the sidewalk and stopped. The distance between the automobile and the body of the deceased was about forty-five feet. The body of the deceased lay in the highway with her head resting on the

curb. The point where the body lay was about twenty-five feet south from the electrolier hereinabove spoken of as being situated in the middle of the block. At a point about ten, twelve or twenty feet north of where the body lay the purse of the deceased was picked up. The newspapers and the hat of the decedent were also picked up somewhere north of the body, but the record does not show how far. Although the driver estimated his speed at thirty or thirty-five miles an hour, other witnesses testified that his speed was forty-five or fifty miles per hour. There was evidence that as he drove forward he did not sound a horn and there was no evidence to the contrary.

Looking back over the facts as recited above, it will be noted that there was an abundance of evidence proving or tending to prove the negligence of the driver. It will also be noted that there was no direct evidence of contributory negligence on the part of the deceased.

■ The plaintiff complains because the trial court refused to give some of his requested instructions. Among others, the plaintiff requested the trial court to instruct the jury: "You are instructed that there is a presumption that Florence S. Adams used ordinary care for her safety as she was crossing the highway on the night she was injured. This presumption is, in itself, a species of evidence and it shall be so considered in your deliberations until and unless it is overcome by satisfactory evidence." No similar instruction was given. It is not claimed it was not sound in law. The presumption therein mentioned was the only piece of evidence that the plaintiff had which tended to refute the claim of the defendants that the deceased was guilty of contributory negligence. Under such circumstances it has been held to be error to refuse to give that instruction. (*Kinnear* v. *Martinelli*, 84 Cal. App. 721, 725 [258 Pac. 686].)

■ On the request of the defendants the court instructed the jury: "In a case where the alleged negligent act of the driver of an automobile consists of an omission of duty suddenly and unexpectedly arising, it is incumbent upon the plaintiff to show that the circumstances were such that the driver of the automobile had an opportunity to become conscious of the facts giving rise to the duty and a reasonable opportunity to perform such before

he can be held liable on the grounds of negligence.'' Because of the failure to recite a due limitation ''without negligence on his part'' or similar language, the plaintiff says the foregoing instruction is not a correct statement of the law and it was error to so instruct the jury. That contention has been sustained by several well-considered cases, among others may be cited *Vedder* v. *Bireley,* 92 Cal. App. 52, 60 [267. Pac. 724] ; *Dougherty* v. *Ellingson,* 97 Cal. App. 87, 96, 97. [275 Pac. 456]. The defendants reply that it is true that the violation of the statutory rules as to speed is presumed to be negligence, but they assert that they introduced evidence which wholly dispelled that negligence. They point to the fact that they stopped within forty-five feet. They cite the statute (sec. 94 of the California Vehicle Act) which, speaking of the requirements of brakes, provides that a set is sufficient which will stop a vehicle going thirty miles an hour within eighty-three and three-tenths feet. They also assert that under the evidence they were entitled to drive forty miles per hour and were not limited to thirty miles per hour. The answer is not sufficient. It does not in any way tend to show that an emergency arose, nor that one arose when the defendants were exercising due care. There was evidence that before the defendant driver entered the intersection of Burlingame Avenue and El Camino Real he was driving at a speed estimated at forty-five or fifty miles per hour and that he so continued until the instant of the impact. Conceding that he claimed he was not going that fast, nevertheless there was no evidence that he was confronted with an imminent peril except of his own creation. It was error to give the instruction quoted under the facts of the instant case.

■ The plaintiff requested an instruction worded as follows: ''I instruct you that the right of a driver of an automobile to the use of a public street is in no wise superior to that of the pedestrian; accordingly, the driver of an automobile has no right to assume that the street is clear, but under all circumstances and at all times he must be vigilant, must anticipate the presence of others, and keep a proper lookout for them. The fact that he did not know that a pedestrian was on the street is no excuse for conduct which would have amounted to recklessness if he had known that such pedestrian was on the street.'' The court gave the first clause ending with the word ''pedes-

trian'' and struck out the rest. The instruction as requested was properly framed, was addressed to the evidence and should have been given. (*Meyers* v. *Bradford,* 54 Cal. App. 157, 159 [201 Pac. 471].)

■ The plaintiff tendered an instruction as to the rights of one in the act of crossing a street. The court struck out the first part and gave the last part. The plaintiff claims the court erred. We think not. It might have refused to give the whole or any portion because it was addressed to a set of facts not presented by this record.

■ Acting on the request of the defendants the court gave three several instructions on contributory negligence. No one of them was addressed to any facts found in the record. They were applicable to street crossing cases, but not to this case. Each one under the facts of this case, necessarily implies that the decedent was bound to look back to ascertain danger, if any. No such duty rested on her. (*Burk* v. *Extrafine Bread Bakery,* 208 Cal. 105, 110 [280 Pac. 522].) Furthermore, there was no evidence that the decedent did not look back.

As shown above, the evidence tended to show that the defendant driver was negligent. There was no direct evidence of contributory negligence and it is presumed the decedent was not guilty of contributory negligence. Under these circumstances, the error complained of in giving and refusing the above-mentioned instructions was prejudicial.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.