[Civ. No. 12211. First Dist., Div. One. Apr. 9, 1943.]

B. L. McGOUGH, Appellant, v. HELEN HENDRICKSON et al., Respondents.

Wm. H. Mackay for Appellant.

Myrick & Deering & Scott and Martinelli & Gardiner for Respondents.

PETERS, P. J.—Plaintiff brought this action to recover damages for injuries received by him when struck by an automobile driven by defendant Helen Hendrickson, and owned or controlled by the other defendants. From a judgment for defendants based upon a jury verdict plaintiff prosecutes this appeal.

The accident occurred at about 2:30 a. m. on May 25, 1941. Appellant was walking towards San Rafael from San Anselmo on Fourth Street. He was walking easterly on the highway on the south side thereof, that is to say, on the right-hand side of the highway facing towards San Rafael. The highway is thirty-two feet wide and is asphalt, except for a cement strip one foot ten inches wide bordering the south edge of the highway. A wide gravel strip borders the cement strip to the south, then there is a gutter, then a row of tall trees and then a gravel walk. There are no houses or business structures on the south side of the highway, the gravel walk being bordered by a railroad right-of-way. On the north side of the highway is a cement sidewalk which starts at San Anselmo and continues at least a quarter of a mile east towards San Rafael beyond the point where the accident occurred. The accident happened within the city limits of San Rafael opposite a house numbered 2154. Plaintiff testified that he was walking on the cement strip when hit from behind by the car driven by defendant Hendrickson. Mrs. Hendrickson was driving towards San Rafael at about twenty to twenty-five miles per hour. The headlights of her car were on the low beam. She, and the two occupants of the car, testified that the trees bordering the road to the south created deep shadows on the highway at the point of the accident. They testified that plaintiff was walking partially on the asphalt part of the highway. Mrs. Hendrickson testified that she did not see plaintiff until the instant before the accident; that at the instant of the accident she was partially blinded by the headlights of a car coming from San Rafael; that she did not blow her horn

when she saw plaintiff because she did not have time to do so. She stopped within a car's length of the point of impact. Plaintiff testified he had no warning of the approach of the car coming from behind him, stating that no light was cast on the highway by the headlights of the oncoming vehicle. Defendants, in addition to denying their negligence, pleaded that the accident was proximately caused by the contributory negligence of plaintiff.

From this brief recital of the facts it is apparent that the case was a typical fact case in which the evidence, and the reasonable inferences therefrom, would support a verdict either way. On this appeal the principal contention of appellant is that the court committed prejudicial error in refusing to give an instruction offered by him to the effect that the place of the accident, as a matter of law, was within a residence district, and that therefore he had the legal right to walk on either side of the highway. The court instructed that whether the district was a residence district or not was a question of fact. Accordingly, it instructed, in accordance with well settled law, that "pedestrians have a right to travel anywhere upon a public highway in a residence district." It also instructed in the language of section 564 of the Vehicle Code that "No pedestrian shall walk upon any roadway outside of a business or residence district otherwise than close to his left-hand edge of the roadway," and further (in the then language of section 758 of the Vehicle Code), that "Every highway shall be conclusively presumed to be outside of a business or residence district unless its existence within a business or residence district is established by clear and competent evidence as to the nature of the district and unless such district is duly signposted when and as required by this code." It gave the jury the statutory definition of a "residence district" as set forth in section 90 of the Vehicle Code. That section provides that a " 'Residence district' is that portion of a highway and the property contiguous thereto, other than a business district, (a) upon one side of which highway, within a distance of a quarter of a mile, the contiguous property fronting thereon is occupied by 13 or more separate dwelling houses or business structures, or (b) . . . A residence district may be longer than one-quarter of a mile if the above ratio of separate dwelling houses or business structures to the length of the highway exists."

Another section should be here mentioned. Section 90.1 of the Vehicle Code provides that "In determining whether a highway is within a business or residence district, the following limitations shall apply and shall qualify the definitions in sections 89 and 90:

"(a) No building shall be regarded unless its entrance faces the highway and the front of the building is within 75 feet of the roadway.

". . .

"(c) In determining the existence of a business or residence district, all churches, apartments, hotels, multiple dwelling houses, clubs and public buildings, other than schools, shall be deemed to be business structures.

"(d) A highway or portion of a highway shall not be deemed to be within a business or residence district regardless of the number of buildings upon the contiguous property when there is no right of access to the highway by vehicles from the contiguous property." Section 465 of the Vehicle Code and those sections immediately following provide for the signposting of the various districts.

Appellant maintains that the evidence established without contradiction that the district in which he was walking was a "residence district," and that he was therefore walking lawfully on the right side of the highway. He urges that the court committed prejudicial error in allowing the jury to determine the nature of the district rather than directing them, as a matter of law, that it was a residence district. The jury found that appellant was guilty of contributory negligence, and appellant urges that the jury may have found that the district was not a residence district and that therefore he was guilty of negligence *per se* in walking on the right-hand side of the highway.

The appellant proved that the accident occurred opposite house numbered 2154; that 103 feet west of that house on the south edge of the highway was a highway sign physically complying with statutory requirements, stating that the speed limit was twenty-five miles per hour; that there were no structures at all on the south side of the highway in the quarter of a mile easterly from the signpost; that in the 1320 feet (one-quarter of a mile) easterly from the signpost on the north side of the street there were exactly thirteen structures facing Fourth Street and within seventy-five feet of the roadway; that within 1320 feet from the west wall of #2154 easterly there

were thirteen structures on the north side of the street, plus most of another structure. Included in both computations is a cleaning and dyeing establishment numbered 2138 and 2134. Plaintiff counts these structures as two separate buildings. If, as a matter of fact, this property constitutes but one building or structure within the meaning of the statutory provision, there would be but twelve structures on one side of the street in the quarter of a mile easterly from the signpost and twelve plus easterly from and including #2154. Appellant urges that, as a matter of law, #2138 and #2134 are two structures. The respondents contend, and this was the theory of the trial court, that whether the cleaning and dyeing establishment was one or two structures was a question of fact. There was considerable evidence introduced on this issue, including a photograph of the property (Defendants' Ex. 8-Q). From that evidence it appears that the cleaning and dyeing establishment is run as a single business under a single ownership; that a brick building (#2134) was constructed many years ago and run as a cleaning and dyeing business; that subsequently, within ten or twelve feet of the first building, a second building was constructed; that between the two buildings is a driveway; that over the driveway the two buildings are joined together; that each building has a separate entrance facing on Fourth Street; that both buildings have been so architecturally constructed as to constitute one unit; that the newer building is run as the office and receiving portion of the business and the older building as the cleaning plant. We have studied the evidence on this issue, including the photograph, and we are convinced that the trial court correctly held that it was a question of fact for the jury to determine as to whether that establishment constituted one or two structures within the meaning of the appropriate provisions of the Vehicle Code. While the evidence on the issue was uncontradicted, the possible reasonable inferences therefrom were conflicting. It is, of course, well settled that when the nature of the district is in dispute, the trial court should submit the issue as to its character to the jury. (*Hill* v. *County of Fresno,* 140 Cal.App. 272 [35 P.2d 593]; see, also, 2 Cal.Jur.Supp., p. 275, § 182.)

 It will be noted that none of the sections dealing with the definition of a residence district expressly states where the quarter of a mile is to start. Section 468 of the Vehicle Code, as it read at the time of this accident, required the speed limit sign to be constructed "at the entrance" to a residence dis-

trict. That expression is obviously synonymous with at the "boundary" of the district used in the older section of the code. A sign not posted at the boundary or entrance to a residence district is not one posted as required by law. (*Cavalli* v. *Luckett,* 40 Cal.App.2d 250 [104 P.2d 708].) Inasmuch as the jury impliedly found on conflicting inferences that there were but twelve structures within a quarter of a mile of the signpost, the jury found, and was justified in so finding, that this signpost was not erected as required by the section.

If the sufficiency of the signposting is to be disregarded, and the quarter of a mile is to start at the point of the accident, we find from the diagram and from the evidence that, included within the fourteen buildings claimed to exist in that distance from the west wall of #2154 is the cleaning and dyeing establishment included as two, and all of #2154 (although the accident occurred about the center of that building) and all of #2028, although all of that building is not within the quarter mile distance. It seems obvious, therefore, that whether the point of impact was or was not within a residential zone, was a fact question for the jury, and that the trial court correctly so instructed. This conclusion makes it unnecessary to pass upon the proper interpretation of section 90.1(d), *supra,* added to the Vehicle Code in 1939.

Appellant urges that even if the jury correctly determined that the first quarter of mile of the disputed zone was not within section 90(a) of the Vehicle Code, it nevertheless was a residence zone as a matter of law within the meaning of the last sentence of section 90 which reads as follows: "A residence district may be longer than one-quarter of a mile if the above ratio of separate dwelling houses or business structures to the length of the highway exists." Appellant proved that 1.7 miles easterly from the signpost under discussion was another signpost for westbound traffic, and that within the total area there were 128 structures, which means an average of well over eighteen for each quarter mile. It is quite apparent that the sentence above quoted does not mean that, by signposting, a municipality can include within a residential district an area on the edge thereof that does not comply with the other statutory requirements. Obviously, the "ratio" rule enunciated in that sentence simply means that once a residential district properly starts and ends with proper signs the fact that in between there might not be the requisite number of structures at a particular point will not prevent the entire

district from being a residence district. The obvious purpose of the amendment was to prevent isolated spots within a total zone from being classified as not included therein because a particular quarter of a mile did not happen to have the requisite number of structures. But that provision does not qualify or restrict the other provisions of the code requiring thirteen structures within a quarter of a mile from the "entrance" of the zone before a particular zone can be classified as residential.

 Appellant next urges that the court erred in refusing to give the italicized portion of the following instruction: "It is settled law that pedestrians have a right to travel anywhere upon a public highway in a residence district, *and it is, therefore, not negligence in them to do so. This is the common-law rule and our legislature has not changed or modified it.*" The first part of the instruction was given, and the italicized portion omitted. There was no necessity for the trial court to state "and it is, therefore, not negligence in them to do so." That naturally follows from the instruction that was given. The sentence relating to the common law was obviously immaterial.

 Appellant also objects to instruction 27 which reads as follows: "You may also consider whether plaintiff failed to exercise ordinary care for his own safety in not walking upon the left-hand side of the highway, if said left-hand side of the highway was open and unobstructed. You may also consider whether plaintiff failed to exercise ordinary care for his own safety in not walking upon any sidewalk available to him and open and unobstructed at the time and place of the accident involved." Appellant contends that the instruction is erroneous for the reason that it tells the jury that it "could find plaintiff negligent *solely* in using the right instead of the left-hand edge of the roadway." (App. Op. Brief, p. 16.) The appellant has misconstrued that instruction. It simply states that even if the appellant had the legal right to walk on the right-hand side of the highway, the exercise of that right might, under the facts, be negligence. That is elementary law. The court told the jury in that and several other instructions that even if appellant had the legal right to walk on the right-hand side of the highway, in determining whether he exercised due care it should consider all the facts. That correctly stated the law.

 Appellant next complains of the exclusion of evidence relating to an experiment. He offered the testimony of the

witness McNaught concerning an experiment supposed to have been made at the place of the accident for the purpose of showing that a pedestrian in appellant's position would have been plainly visible to an autoist proceeding from the west as were respondents at the time of the accident. The witness testified that he made the alleged experiment at 9:30 p. m. on the evening of October 22, 1941, the accident having occurred at 2:30 a. m. on May 25, 1941. No foundation was laid as to whether the conditions existing in October were substantially similar to those existing in May. On this ground the evidence was excluded. The evidence was obviously inadmissible. Before such evidence is admissible it is incumbent on the one offering the evidence to show the facts surrounding the experiment, and to show that the circumstances were substantially similar with those existing at the time of the accident. (*People* v. *Halbert,* 78 Cal.App. 598 [248 P. 969]; *People* v. *Woon Tuck Wo,* 120 Cal. 294 [52 P. 833].) The sufficiency of the evidence of similarity rests largely in the discretion of the trial court. The wisdom of the trial court's ruling in the present case was demonstrated when appellant admitted that the circumstances existing in May were dissimilar with those existing in October in that the foliage on the trees was much heavier in May than in October, thus creating deeper shadows.

Appellant makes other points concerning some of the instructions, concerning some of the rulings on the admissibility of evidence and concerning some of the remarks of the trial judge. We have examined each such assignment of error, and find that none of them is well taken. Certainly it cannot be successfully urged that, even if there were some minor errors on such rulings, any one of them alone, or considered as a group, was prejudicial. The record shows that the case was carefully and fully tried, and that the jury was properly instructed. The jury found either that the proximate cause of the accident was the negligence of both appellant and respondents, or that such proximate cause was the contributory negligence of appellant. The evidence amply supports either finding, and either finding is fatal to appellant's appeal.

The judgment appealed from is affirmed.

Knight, J, and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 7, 1943. Carter, J., and Traynor, J., voted for a hearing.